UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARK A. BROOKS-ALBRECHTSEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:16-cv-391-WTL-DKL |
| | ) |
| INDIVIDUAL MEMBERS OF THE | ) |
| INDIANA STATE BOARD OF LAW | ) |
| EXAMINERS *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ENTRY REGARDING JURISDICTION

The Court, by separate order, granted the Plaintiff's motion for leave to file a second amended complaint. *See* Dkt. No. 36. The Court now reviews the Plaintiff's Second Amended Complaint, Dkt. No. 37, to determine whether it has jurisdiction over the claims therein.

### I. BACKGROUND

The following facts are taken from the allegations in the Plaintiff's Second Amended Complaint, Dkt. No. 37, and the Indiana Supreme Court's order in *In re the Application of M.B.*, Case No. 94S00-1602-BL-89 (Ind. Feb. 16, 2016), Dkt. No. 17.

The Plaintiff, Mark A. Brooks-Albrechtsen, graduated from a law school in Ohio in May 2015. He moved to Indiana and applied to take the Indiana bar examination in July 2015. On May 19, 2015, the Indiana State Board of Law Examiners (the "Board"), pursuant to the Indiana Rules of Court, Rules for Admission to the Bar and the Discipline of Attorneys (the "Admission and Discipline Rules"), required the Plaintiff to appear before it for inquiry into his character and fitness. The Board required the Plaintiff to answer questions regarding a sealed misdemeanor conviction and a prior employment termination, both of which he had disclosed on his bar

application. Following the Plaintiff's appearance, the Board approved his application to take the July 2015 bar examination, which he failed.

The Plaintiff applied to take the bar examination again in 2016. In his application for the February examination, he disclosed that he was "self-employed by Albrechtsen Law, a limited liability corporation" and that he drafted complaints, memos, and briefs, and performed legal research for licensed attorneys. Dkt. No. 37 at ¶ 23. The Board sent the Plaintiff a notice on January 29, 2016, informing him that, to allow it to make a determination on his application, he would have to appear before the Board. The appearance request stated, in relevant part:

> Admission and Discipline Rule 12 requires the State Board of Law Examiners to certify to the Indiana Supreme Court that applicants for admission to the bar have the requisite good moral character and fitness to practice law. In order for the Board to make a determination on your application, it will be necessary for you to personally appear before the Board at its upcoming meeting.

*Id.* at ¶ 17. The Plaintiff emailed the Board seeking additional information regarding the appearance. The Board responded, indicating only that it had "'questions about [the Plaintiff's] application.'" *Id.* at ¶ 20. It did not provide him with additional detail.

On January 31, 2016, the Plaintiff sent a letter to Indiana Supreme Court Chief Justice Loretta Rush asking that Admission and Discipline Rule 12 Section 5 be amended to require a more detailed notice that would allow individuals required to appear before the Board to better prepare for their appearances. In his letter, the Plaintiff stated that he had "no idea why the Board has commanded [his] appearance, and upon inquiry, the Board declines to provide any information whatsoever regarding the subject-matter of the meeting." *Id.* at ¶ 27. On February 5, 2016, Chief Justice Rush informed the Plaintiff that she "'sent an inquiry to the Board of Law Examiners as to the issues [the Plaintiff] set forth [in his January 31, 2016, letter].'" *Id.* at ¶ 22.

The Plaintiff appeared before the Board on February 12, 2016, and was permitted to answer questions posed to him by the Board, but "was not given any opportunity to put on a defense, make any statements, examine his accusers, or make any arguments." *Id.* at ¶ 29. The Board and the Plaintiff discussed the Plaintiff's letter to Chief Justice Rush and his current employment through his company, Albrechtsen Law. The Board believed that the Plaintiff's statement to Chief Justice Rush ("I have no idea why the Board has commanded my appearance") was false and that he violated Rule of Professional Conduct Guideline 9.1 while self-employed through Albrechtsen law.[1] As a result, the Board issued a verbal decision at the meeting, declining to let the Plaintiff take the February 2016 bar examination and prohibiting him from reapplying for bar admission until February 2018.

Following his appearance before the Board, the Plaintiff filed an "Emergency Petition for Writ of Prohibition" to the Indiana Supreme Court because he understood the Board's verbal denial to be a final action as described in Admission and Discipline Rule 14 Section 2.[2] *See* Dkt. No. 31 at 2. He sought to have the Board's decision overturned so that he could sit for the February 2016 bar examination. In response, the Indiana Supreme Court issued an order on

---

[1] Indiana Rule of Professional Conduct Guideline 9.1 states, in relevant part, that:

A non-lawyer assistant shall perform services only under the direct supervision of a lawyer authorized to practice in the State of Indiana and in the employ of the lawyer or the lawyer's employer. Independent non-lawyer assistants, to-wit, those not employed by a specific firm or by specific lawyers are prohibited.

[2] Admission and Discipline Rule 14 Section 2 provides that:

Any applicant aggrieved by the final action of the State Board of Law Examiners in refusing to recommend to the Supreme Court of Indiana the admission of the applicant to practice law in Indiana for any reason other than the failure to pass any examination as set forth in section (1) may, within twenty (20) days of receipt of notification setting forth the reason for refusal, file a petition with the Supreme Court of Indiana requesting review by this Court of such final determination.

February 16, 2016, dismissing the Plaintiff's petition as procedurally premature. *See* Dkt. No. 17. It explained that "pursuant to Admission and Discipline Rule 12, section 7,[3] M.B. would have the right to file a written request with the Board for a formal hearing concerning its determination" and that "there has been no final action of the Board because the hearing mentioned in [Admission and Discipline] Rule 12, sections 7 and 9, has not occurred and a final determination thereafter has not been made by the Board." *Id.*

On February 15, 2016, a day before the Indiana Supreme Court issued its order, the Board provided the Plaintiff with written confirmation of its February 12, 2016, meeting decision. The Board determined, in part, as follows:

> After careful and deliberate consideration, the Board determined that you have failed to sustain the burden of proof that you possess the requisite character and fitness to be admitted to the practice of law. As a result, the Board has denied your application to sit for the bar examination and to practice law in the state of Indiana. The Board further determined, based upon the facts presented, that you shall not be permitted to reapply for admission to the Indiana Bar until the February 2018 examination . . . As a result of the Board's determination, you will not be permitted to take the bar examination and your application has therefore been denied and dismissed.

Dkt. No. 37 at ¶ 35.

On February 18, 2016, the Plaintiff filed suit in this Court, alleging that the individual members of the Board in their official capacities violated his equal protection and due process rights under the Fourteenth Amendment. The Plaintiff filed an amended complaint on February 24, 2016, which the Defendants moved to dismiss.

---

[3] Admission and Discipline Rule 12 Section 7 states in relevant part:

> If the Board finds that the applicant is not eligible for admission . . . after inquiry into the applicant's character and fitness to practice law, . . . the applicant [] may request a hearing under Section 9 of this Rule by filing a written request for such hearing with the Board within thirty (30) days of mailing of notice to the applicant of the finding of the Board.

4

The Plaintiff also timely requested a hearing before the Board pursuant to Admission and Discipline Rule 12 sections 7 and 9. The request was served on the Board on February 29, 2016. The Plaintiff did not hear any further from the Board and assumed that they declined to allow him a hearing.[4]

Because he was not allowed to sit for the bar examination, the Plaintiff sought from the Board a legal intern certification, which would have allowed him to work under the direction of a supervising licensed attorney. *See* Ind. Admis. Disc. R. 2.1. Admission and Discipline Rule 2.1 Section 2(b) allows law school graduates to serve as legal interns only "from the date of graduation until the graduate has taken and has been notified of the results of the first examination for which the graduate is eligible under Admission and Discipline Rule 13, or if successful on that examination, until the first opportunity thereafter for formal admission to the Bar of Indiana." The Board denied the Plaintiff's certification request because the Plaintiff did not meet the eligibility requirements for certification, given that he already had taken, and failed, the Indiana bar examination.

Following the Defendants' filing their motion to dismiss, the Court granted the Plaintiff leave to file a second amended complaint, mooting all motions pending at the time of that Entry. *See* Dkt. No. 36. In the Second Amended Complaint, which is now the operative complaint in this case, the Plaintiff included additional claims and defendants - the Board members in their individual capacities, "John and Jane Does, in their individual and official capacities, as officers,

---

[4] The Defendants indicate that a hearing was held on June 30, 2016, at which the Plaintiff failed to appear. *See* Dkt. No. 30 at 3. They also state that there has been no final action with respect to the Plaintiff's bar eligibility. *Id.* at 3-4; n. 2. The Defendants submit no evidence to support these assertions, and the Court has not considered them in its ruling.

agents, or employees[] of the Indiana State Board of Law Examiners," and the Justices of the Indiana Supreme Court in their official capacities.  *See* Dkt. No. 37.

## II. DISCUSSION

The Plaintiff asserts several violations of his Fourteenth Amendment rights to equal protection and due process relating to his bar application and legal intern certification processes. He argues, for example, that his bar application process lacked procedural due process, maintaining both that his "pre-deprivation hearing . . . lacked the requisite sufficient notice to conform with the due process requirements under the Fourteenth Amendment" and that "[a] pre-deprivation hearing was possible."  Dkt. No. 37 at ¶¶ 83-85; 96.  He further argues that three components of the Indiana bar examination itself, the Multistate Bar Exam, Multistate Performance Test, and the Indiana Essay Examination, are unconstitutional "because they are unreasonable and fail to serve a substantial relation to the purpose sought to be served - to determine lawyerly qualifications - and therefore, amount to an unlawful restraint on Plaintiff's liberty interest to pursue his lawful calling and property interest in obtaining the need-based benefit of employability."  *Id.* at ¶ 45.

With respect to the legal intern certification process, he claims:

> [H]e is unable to utilize his juris doctorate degree and law experience to serve as a legal intern for any Indiana attorney, resulting in an unlawful restraint, absent compelling or important government interest, and substantially related to serving that interest, on [the] Plaintiff's liberty interests to pursue his lawful calling, and property interest in obtaining the need-based benefit of employability.

*Id.* at ¶ 43.  The Plaintiff also brings facial challenges to the constitutionality of Admission and Discipline Rules 2.1, 12, 17, and 18 and to Indiana Rule of Professional Conduct 9.1.

6

The Plaintiff seeks declarative and injunctive relief; "[a]n order prohibiting the Defendants and their agents from unlawfully interfering with the rights of [the] Plaintiff"; and compensatory and punitive damages from the Board. *Id.*, Request for Relief.

Before permitting the Plaintiff's claims to proceed, the Court is required to examine whether the *Younger* abstention doctrine precludes the Court from exercising jurisdiction over the Plaintiff's claims: "The abstention doctrines all concern the propriety of exercising subject matter jurisdiction . . . The federal courts are 'obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction.'" *Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996) (quoting *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 278 (1977)). "[A] court must dismiss the case without ever reaching the merits if it concludes that it has no jurisdiction." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (citation omitted); *see also Barichello*, 98 F.3d at 955 ("When confronted with circumstances that clearly implicate *Younger* concerns, a federal court must abstain"). When examining questions of jurisdiction, the Court may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co.*, 999 F.3d at 191 (quotation omitted). The Plaintiff bears the burden of establishing jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

The *Younger* abstention doctrine applies only where there exist ongoing state proceedings. *Barichello*, 98 F.3d at 955 (citing *Trust & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 295 (7th Cir. 1994)). Federal courts must abstain from exercising jurisdiction over claims for equitable relief when the ongoing state proceedings are "(1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional

7

claims, (4) so long as no extraordinary circumstances exist which would make abstention inappropriate." *Green v. Benden*, 281 F.3d 661, 666 (7th Cir. 2002) (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 436-37 (1982); *Majors v. Engelbrecht*, 149 F.3d 709, 711 (7th Cir. 1998)). Extraordinary circumstances, making abstention inappropriate, exist when (1) the pending state proceeding was motivated by a desire to harass or is conducted in bad faith; or (2) the plaintiff has demonstrated an extraordinarily pressing need for immediate equitable relief to avoid an irreparable injury. *FreeEats.com v. Indiana*, 502 F.3d 590, 596-97 (7th Cir. 2007) (internal citations and quotations omitted).

The Plaintiff claims that the Board took final action with respect to his bar admission and, paradoxically, also claims that it impeded any final action from taking place. First, he states that he understood the verbal denial he received from the Board on February 12, 2016, to be a "final action," to which he responded by filing an emergency petition with the Indiana Supreme Court. *See* Dkt. No. 37 at ¶ 31; 34. The Supreme Court informed him on February 16, 2016, that no final action had been taken by the Board and that his petition to the Indiana Supreme Court was therefore premature. The Supreme Court was correct: The February 12, 2016, verbal denial was not a final action. Several steps remained before a final action could occur. Admission and Discipline Rule 12 required the Board to issue to the Plaintiff a written notice of its determination. Written notice would then trigger the Plaintiff's option to request a hearing before the Board. *See* Ind. Admis. Disc. R. 12 § 7. If the Plaintiff requested a hearing, a hearing would occur either before the Board or a hearing panel consisting of three Board members. Ind. Admis. Disc. R. 12 § 9. If a panel conducted the hearing, it would report its findings to the Board for consideration and a decision. *Id.* The Board would make a decision and prepare a final report of the proceedings, which must include specific findings of fact, conclusions, and

8

recommendations. *Id.* The Board would then notify the applicant of its decision and include a copy of its final report with the notice. That notification is the Board's final action, which could then be reviewed by the Indiana Supreme Court. *See id.*; *see also* Ind. Admis. Disc. R. 14.

The Board issued to the Plaintiff on February 15, 2016, a written confirmation of its verbal denial. This action triggered the Plaintiff's option to request a hearing before the Board. The Supreme Court explained the hearing request process to the Plaintiff in its February 16, 2016, order. Nonetheless, the Plaintiff filed the present lawsuit on February 18, 2016. Approximately one week later, he filed with the Board a request for a hearing. In view of the Plaintiff's later-submitted hearing request, it is clear to the Court that the Plaintiff knew at the time that he filed his lawsuit that no final action had been taken by the Board and, thus, an ongoing state proceeding existed.

The Plaintiff claims that a second action -- rather inaction -- by the Board ruled out any final action. He states that, following his request for a hearing, "[he] never heard anything further from the Board, or anyone else for that matter, regarding [his] bar application or appeal, and interpreted such abstention as [the Board] invoking their [sic] option under Admission and Discipline Rule 12, Section 9(a), to decline [him] a hearing, which foreclosed [him] from any judicial review." Dkt. No. 37 at ¶ 37. The Plaintiff argues that Admission and Discipline Rule 12 Section 9 allows the Board discretion in whether to provide a hearing. Specifically, he maintains that Section 9(a) gives the Board the "option . . . to decline [the] Plaintiff a hearing." *Id.* He further reasons that, if the Board chooses not to hold a hearing, he is precluded from obtaining judicial review in the Indiana Supreme Court because "absent this option hearing, [the] Plaintiff would fail to receive the 'final notice' . . . to invoke Indiana Supreme Court review." *Id.* at ¶ 34.

9

When a bar applicant requests a hearing, Rule 12 Section 9 does not afford the Board discretion in determining whether to hold a hearing.[5] It plainly states, in relevant part: "If the applicant . . . timely requests a hearing, the State Board of Law Examiners *will* schedule a hearing pursuant to the provisions of this Section." Ind. Admis. Disc. R. 12 § 9 (emphasis added). Section 9(a) only grants the Board discretion to appoint a three-person panel to conduct a hearing, rather than requiring the full Board to conduct it. *See* Ind. Admis. Disc. R. 12 § 9(a) ("the Board *may* appoint a hearing panel from the members of the Board, consisting of three members") (emphasis added). That the Plaintiff has not heard further from the Board, that he has not received "final notice" from the Board, simply means that the action is still pending.

Because the state proceedings are ongoing, the *Younger* factors favor abstention. First, the bar admission process is a judicial proceeding within the meaning of *Younger*. *See, e.g., Brown v. Bowman*, 668 F.3d 437, 443 (7th Cir. 2012) (bar admissions application process as judicial process); *Hale v. Comm. on Character and Fitness of the State of Ill.*, 335 F.3d 678, 682 (7th Cir. 2003) (bar admissions process as judicial process); *see also Middlesex Cty. Ethics Comm.*, 457 U.S. at 433-34 (attorney disciplinary proceeding is judicial in nature). Second, it is well established that bar admission proceedings implicate an important state interest: regulating persons who are authorized to practice law in the state. *See Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975) ("The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'"); *Middlesex Cty. Ethics Comm.*, 457 U.S. at 434 (explaining that "[t]he State . . . has an extremely important interest in maintaining and assuring

---

[5] Section 8 allows the Board to dispense with the hearing requirement in one circumstance: "where the evidence is not in dispute." Ind. Admis. Disc. R. 12 § 8. The parties have not asserted that such circumstances exist in this case.

10

the professional conduct of the attorneys it licenses"); *Storment v. O'Malley*, 938 F.2d 86, 89 (7th Cir. 1991) (same). Third, the Plaintiff is able to bring his constitutional claims before the Indiana Supreme Court as part of the review process provided by the state's admission and discipline rules, and further, the Indiana Supreme Court is fully capable of resolving such claims. *See Middlesex Cty. Ethics Comm.*, 457 U.S. at 436; *Hale*, 335 F.3d at 683-84. Fourth, the Plaintiff does not allege in his Second Amended Complaint that the pending state proceeding "was motivated by a desire to harass or is conducted in bad faith," and the Plaintiff has not demonstrated "an extraordinarily pressing need for immediate equitable relief." *FreeEats.com*, 502 F.3d at 596-97 (internal quotation omitted).

Because the Plaintiff may raise his constitutional claims before a state court with the power to adjudicate them, and because no bad faith, harassment, or other exceptional circumstances dictate to the contrary, this Court abstains from interfering with the ongoing state proceeding.[6] *See Middlesex Cty. Ethics Comm.*, 457 U.S. at 437; *Green*, 281 F.3d at 667 (under Illinois law, state court administrative review of proceeding provided an adequate opportunity for plaintiff to raise constitutional challenges).[7] Therefore, the Court will dismiss all of the

---

[6] Abstention applies both to the Plaintiff's claims for equitable relief and his claims for damages. "[W]hen *Younger* requires equitable arguments to be presented to state courts, claims for monetary relief are also stayed—but should not be dismissed outright if the claims for damages cannot be redressed in the state proceeding." *Nelson v. Murphy*, 44 F.3d 497, 502 (7th Cir. 1995) (citing *Deakins v. Monahan*, 484 U.S. 193, 202 (1988)). Because the Indiana Supreme Court can hear claims for both equitable and monetary relief, the Plaintiff must present his claims in the state court. *Id.*

[7] The Court notes that dismissal of these claims for lack of subject matter jurisdiction would be appropriate even if the state proceeding were final because the *Rooker-Feldman* doctrine would bar this Court from having subject matter jurisdiction over the Plaintiff's claims. Under this doctrine, "[c]laims that directly seek to set aside a state court judgment are *de facto* appeals and are barred without additional inquiry." *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004) (quotations and citations omitted). It further bars review of claims that are inextricably intertwined with the state court judgment when the plaintiff would have had "'a

Plaintiff's claims that relate to the Board's ruling that he cannot apply for admission to the Indiana Bar until February 2018.

The Plaintiff, however, also asserts constitutional claims that are not related to the ongoing state proceeding and thus, are not subject to *Younger* abstention or the *Rooker-Feldman* doctrine. *See, e.g.*, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 487 (1983) (holding that, in the context of a completed judicial proceeding, subject matter jurisdiction exists over general constitutional attack to the rules governing bar admission because such claims "do not require review of a judicial decision"). Namely, the Plaintiff claims that the Multistate Bar Exam, Multistate Performance Test, and Indiana Essay Examination, components of the Indiana bar examination, are "unconstitutional because they are unreasonable and fail to serve a substantial relation to the purpose sought to be served--to determine lawyerly qualification--and therefore, amount to an unlawful restraint on [the] Plaintiff's liberty interests to pursue his lawful calling and property interest in obtaining the need-based benefit of employability." Dkt. No. 37 at ¶45.

Additionally, the Plaintiff claims that the rule governing legal intern certification, Admission and Discipline Rule 2.1, violates his right to equal protection, arguing that it "discriminates against law school graduates who sit for their second bar exam or subsequent bar

---

reasonable opportunity to raise [them] . . . in state court proceedings.'" *Id.* (quoting *Brokaw*, 305 F.3d at 668).

According to Admission and Discipline Rule 14 Section 2, the Plaintiff had the opportunity to challenge a final decision by the Board by petitioning the Indiana Supreme Court for review. The Plaintiff also raises several facial and as-applied constitutional claims that are inextricably intertwined with the state proceeding. There are no state court actions or procedures that prevented the Plaintiff from seeking such a review. The Plaintiff would have had a reasonable opportunity to raise his claims before the Indiana Supreme Court had he petitioned it for review. Accordingly, had final action been taken by the Board, the *Rooker-Feldman* doctrine nonetheless would have precluded this Court's jurisdiction over all of the Plaintiff's claims that are inextricably intertwined with the state court proceeding.

exams, and law school graduates who decline to take the bar exam." *Id.* at ¶55. He further asserts that "[t]he justification utilized by Defendants in adopting Admission and Discipline Rule 2.1 sits in the face of contrary evidence and does not satisfy a compelling or important government interest, and [is not] substantially related to serving that interest." *Id.* at ¶56. Because he is ineligible for legal intern certification, he asserts that "he is unable to utilize his juris doctorate degree and law experience . . ., absent compelling or important government interest[] and [not] substantially related to serving that interest, on [the] Plaintiff's liberty interests to pursue his lawful calling, and property interest in obtaining the need-based benefit of employability." *Id.* at ¶ 43. These claims are not subject to *Younger* abstention.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that, pursuant to *Younger v. Harris*, it should abstain from interfering with the ongoing state proceeding. The Court, therefore, **DISMISSES**, without prejudice, all of the Plaintiff's claims other than the claims regarding the constitutionality of the Indiana bar examination and Admission and Discipline Rule 2.1.

Furthermore, Defendants Indiana State Board of Law Examiners - Barbara L. Brugnaux, Michael M. Yoder, Jon B. Laramore, Gary K. Kemper, Charlotte F. Westerhaus-Renfrow, Michael J. Jenuwine, Kathryn H. Burroughs, Jeffry A. Lind, and Shelice R. Tolbert - and John and Jane Does of the Indiana State Board of Law Examiners are **DISMISSED** as defendants in this action. **The Clerk is directed to amend the docket to indicate that the State *ex rel.* Indiana Supreme Court is the only remaining defendant in this matter.**

The State is directed to respond to the claims remaining in the Second Amended Complaint, specifically, the Plaintiff's claims regarding the constitutionality of the bar

13

examination and Admission and Discipline Rule 2.1, by no later than 21 days from the date of this Entry. This response may, of course, be in the form of an answer or a motion to dismiss.[8]

SO ORDERED: 1/13/17

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

**Copy by U.S. Mail to:**

    **Mark A. Brooks-Albrechtsen**
    **2230 Stafford Road**
    **Suite 115**
    **Plainfield, IN 46168**

Copy to all counsel of record via electronic notification.

---

[8] The Court notes that it is not clear whether the Plaintiff has standing to bring his bar examination claims given that a ruling by this Court that the bar examination is unconstitutional would not provide him with redress, in light of the fact that the Plaintiff still would not be eligible to become a member of the Indiana bar because, as things stand, he has not satisfied the character and fitness requirement, which is independent of the bar examination.