UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARK A. BROOKS-ALBRECHTSEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:16-cv-391-WTL-TAB |
| | ) |
| STATE OF INDIANA *ex rel.* | ) |
| INDIANA SUPREME COURT, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## SECOND ENTRY ON VARIOUS MOTIONS

Pursuant to this Court's Order, the Court held a hearing on October 26, 2017, to aid in determining whether to grant the Plaintiff's motion for reconsideration. Specifically, the Court sought to hear evidence on whether the bad faith exception to the *Younger* abstention doctrine applies to the Plaintiff's claims relating to his bar admission application.

### I.  BACKGROUND

The Court recounts below the background information included in its September 21, 2017, Entry on Various Motions (Dkt. No. 55):

> On his second application to sit for the Indiana bar examination, the Indiana Board of Law Examiners determined that the Plaintiff was ineligible to sit for the examination. It also prohibited him from reapplying for bar admission until February 2018. The Plaintiff filed a petition with the Indiana Supreme Court seeking review of the Board of Law Examiner's determination, which that court determined was premature. On February 18, 2016, the Plaintiff filed suit in this Court. The Defendants filed a motion to dismiss the Plaintiff's first amended complaint (Dkt. No. 15). Following that motion, the Plaintiff filed a motion for

leave to file a second amended complaint (Dkt. No. 23). The Court granted the Plaintiff's motion for leave to file a second amended complaint (Dkt. No. 36), and reviewed that complaint to determine whether it had jurisdiction. In its entry regarding jurisdiction (Dkt. No. 38), the Court dismissed for lack of subject matter jurisdiction all of the Plaintiff's claims other than the Plaintiff's claims regarding the constitutionality of the Indiana bar examination and of Indiana Admission and Discipline Rule 2.1, concluding that, pursuant to *Younger v. Harris*, it should abstain from interfering in the ongoing state proceeding regarding the Plaintiff's application to sit for the Indiana bar examination. It further dismissed all defendants other than the State. The Plaintiff first raised his bar examination claims in his second amended complaint and amended his claim regarding Admission and Discipline Rule 2.1 in that complaint. Because the Court simultaneously granted the Plaintiff leave to file his second amended complaint (Dkt. No. 36) and filed its entry regarding jurisdiction, the Defendants had not yet responded to the second amended complaint's allegations regarding the constitutionality of the bar examination and of Admission and Discipline Rule 2.1. The Court directed the State to do so.

Shortly after the Court ordered the State to respond to those allegations, the Plaintiff filed a motion for reconsideration of the Court's entry on jurisdiction and moved for leave to file a third amended complaint (Dkt. No. 39). With the Plaintiff's motions pending, the State filed a motion to dismiss the Plaintiff's claims in his Second Amended Complaint challenging the constitutionality of the bar examination and Admission and Discipline Rule 2.1 (Dkt. No. 43). The

> Plaintiff filed a notice of partial dismissal, voluntarily dismissing his claims relating to the constitutionality of the bar examination, but reserving the opportunity to respond to the State's motion to dismiss that claim in the event that the Court reconsidered its entry on jurisdiction. *See* Dkt. No. 48 at 2.

Dkt. No. 55 at 1-2.

On September 21, 2017, the Court granted the Plaintiff's motion for reconsideration to the extent that it would hold a hearing on the issue of bad faith. It ordered the parties to appear before it to help the Court determine whether the bad faith exception to *Younger* abstention applied to the Plaintiff's claims related to his bar examination application. And, because it was unclear whether bad faith had occurred in the state proceeding, and thus unclear whether the Plaintiff's third amended complaint would be futile, the Court granted the Plaintiff's motion for leave to file his third amended complaint. It further denied as moot the State's motion to dismiss (Dkt. No. 43).

Pursuant to this Court's Order, the Court held a hearing on October 26, 2017. The Plaintiff and State appeared, and the Court heard evidence on whether the bad faith exception to the *Younger* abstention doctrine applies to the Plaintiff's claims relating to his bar admission application.

## II. BAD FAITH ISSUE

When a federal court determines that a pending state proceeding is conducted in bad faith, extraordinary circumstances exist that allow a possible exception to *Younger* abstention. *FreeEats.com v. Indiana*, 502 F.3d 590, 596 (7th Cir. 2007). In such circumstances the court may exercise jurisdiction. *Id.* The Plaintiff contends that the state proceeding was conducted in bad faith and thus warrants this Court's jurisdiction. He argues as follows:

3

> The Board [of Law Examiners] currently holds [him] in limbo for the duration of his suspension by failing to issue a final action, precluding judicial review by the Indiana Supreme Court. Or, if the Board did hold a final hearing in [his] absence, this too holds [him] in limbo for the duration of his suspension by failing to provide [him] with the Board's notice of final action in sufficient time to allow [him] to seek judicial review by the Indiana Supreme Court within the 20 days allotted under Admission and Discipline Rule 14, Section 2.

Dkt. No. 39 at 6.

### A. The June 30, 2016 Hearing and the Board of Law Examiners' Decision

The Board of Law Examiners ("the Board") scheduled a hearing that was to be held on June 30, 2016. The Board's counsel, Libby Milliken, contacted the Plaintiff on June 29, 2016, to determine whether he "intend[ed] on withdrawing his request for a hearing." Dkt. No. 39 at 5. The Plaintiff responded to the inquiry, stating, in part, that he believed that the "hearing cannot save the Board's constitutional violations" and said that the hearing would be "a complete waste of time for me and those expected to attend." *Id.* at 5-6. He also stated that "any action taken by the Board would be futile and meaningless." *Id.* at 6. He did not attend a hearing and stated that he did not know whether the Board of Law Examiners proceeded with the hearing. *Id.* He also explained that he "ha[d] not received 'specific findings of fact, conclusion and recommendations' as required by Admission and Discipline Rule 12, Section 9." *Id.*

In fact, the Board did hold a hearing on June 30, 2016. A panel of three Board members participated in the hearing ("Hearing Panel"). The State of Indiana presented evidence; as promised, the Plaintiff did not attend.

On July 14, 2016, the Hearing Panel presented to the Board findings of fact, conclusions of law, and a decision for the Board's consideration. The Hearing Panel reached the following conclusions:

4

> 1. [The Plaintiff] has operated a business in which he offers independent legal research services in violation of Guideline 9.1 in the Indiana Rules of Professional Conduct.
>
> 2. [The Plaintiff] also has admitted that he was unaware of that rule until the Board called it to his attention, showing that he lacks fitness to practice law.
>
> 3. [The Plaintiff] also has stated that Rule 9.1 does not apply to non-attorneys, implying that he need not follow it. As an applicant for the Indiana bar, both his failure to follow Rule 9.1 and his position that he is not required to follow it show that he lacks character and fitness to practice law in Indiana.
>
> 4. [The Plaintiff] also proposed to the Indiana Supreme Court a rule change regarding notice of Board of Law Examiners' proceedings. In his letter to the Court, the applicant misrepresented his interactions with the Board. He stated that "I have no idea why he [sic] Board has commanded my appearance, and upon inquiry, the Board declines to provide any information whatsoever regarding the subject matter of the meeting." This statement was not correct because the Board had sent him specific questions about [Albrechtsen Law, LLC], providing more than "no idea" of the subject matter the Board was concerned about. This conduct shows that the applicant lacks the character required to practice law in Indiana.
>
> 5. The applicant's petition for writ of prohibition filed by the applicant was dismissed because the applicant had not completed the Board's administrative process. The applicant admitted in a later court filing that he was unaware of his responsibility to request a formal Board hearing despite the description of that process in Admission & Discipline Rule 12, Section 7. This failure indicates that the applicant lacks fitness to practice law in Indiana.
>
> 6. [The Plaintiff] failed to disclose to the Board at least four civil proceedings to which he was a party despite a clear requirement in the application that he do so. This omission shows that the applicant lacks both character and fitness to practice law in Indiana.
>
> 7. The LinkedIn website maintained by [the Plaintiff] would lead a reasonable person to conclude that he is a lawyer admitted to practice law in Indiana. This misrepresentation shows that the applicant lacks the character to practice law in Indiana.

Hearing Ex. A.

Based on those conclusions, the Hearing Panel recommended that the Board determine that the Plaintiff lacks the character and fitness required to practice law in Indiana and that he not be permitted to re-apply for admission to the Indiana bar until February 2021. *Id.* On July 14, 2016, the Board approved and adopted the Hearing Panel's findings of fact, conclusions of law, and decision. *Id.*

### B. Communicating the Board's Decision to the Plaintiff

On July 15, 2016, the Board sent the Plaintiff by certified mail return receipt requested and by email copies of the Board's decision and the Hearing Panel's findings of fact, conclusions of law, and decision recommendation.[1] *See* Hearing Exs. B & C. It sent the information to the address provided by the Plaintiff on his bar application and to the email address the Plaintiff had used to correspond with the Board the day before the hearing was held.[2] The Board has no record of receiving a return receipt on the mailing, so it does not have confirmation that the Plaintiff received the mailing. There is no indication, however, that the mailing was returned to the Board as unclaimed or any apparent reason why it would have been.

The Board received a reply message from the Plaintiff's email address, which it believed indicated that the Plaintiff might not have received its July 15, 2016, message. *See* Hearing Ex. D. The message's subject line read "Returned mail; User unknown," and the message described the Plaintiff's email address as having "permanent fatal errors." Hearing Ex. F.[3] As a result, on July 17, 2016, the Board sent the Plaintiff another email forwarding the July 15, 2016, email and attached documents. *Id.* It again received a reply message from the Plaintiff's email address, which it believed indicated that its July 17, 2016, email might not have been received by the Plaintiff. *Id.* It again forwarded the July 15, 2016, email and attached documents to the same

---

[1] As the Plaintiff noted at the hearing before this Court, the mailings and electronic communications from the Board to him did not contain the hundreds of pages of exhibits to the Hearing Panel's document.

[2] The Court notes that the physical address is one that the Plaintiff used on his most recent filings in this Court, Docket Nos. 58 and 62, and is, therefore, presumed to be valid and associated with the Plaintiff at the time of the Board's mailings. It is not, however, the address that the Plaintiff has on file with this Court as his address for corresponding regarding matters in this lawsuit.

[3] Exhibit 1 to this Entry is an excerpt of Hearing Exhibit F, containing the reply messages sent from the Plaintiff's email address.

email address on July 18, 2016. Hearing Ex. E. In addition, on July 19, 2016, the Board sent another letter and copy of the documents by first class U.S. mail to the same physical address as it sent the July 15, 2016, mailing. Hearing Ex. F. This mailing was stamped "Return to Sender" and returned to the Board. *See* Hearing Ex. G. The Board made another attempt to mail the documents to the Plaintiff on July 28, 2016. *See* Hearing Ex. H. This time, it mailed the documents to the physical address that this Court has on file as the Plaintiff's official address for correspondence in this lawsuit. There is no indication that this mailing was returned to the Board.

### C. No Bad Faith

Given the Board's numerous attempts to provide the Plaintiff with its decision, the Board did not act in bad faith. The Board neither withheld final action by not conducting a hearing, nor avoided providing its decision to the Plaintiff "in order to preclude judicial review," as the Plaintiff has speculated to this Court. *See* Dkt. No. 39 at 7.

Rather, the Board held a hearing before a Hearing Panel on June 30, 2016. The Hearing Panel presented the Board with findings of fact, conclusions of law, and a recommended decision on July 14, 2016, and on the same day, the Board approved and adopted the Hearing Panel's findings of fact, conclusions of law, and decision. Moreover, the Board attempted to provide this information to the Plaintiff by mail and electronic communication the following day and again by various means four additional times thereafter. The Board's attempts to provide the Plaintiff with notice show that it was not acting in bad faith.

At the hearing, the Plaintiff did not explain why he might not have received mail properly addressed to him at two different valid addresses, nor did he explain why, in the case of the Board's July 19, 2016, mailing, a piece of mail properly addressed to him would have been

7

stamped "return to sender."  Although it does not appear that the July 15, 2016, certified mailing, and the July 28, 2016, mailing were returned to the Board, the Plaintiff argues that he did not receive notice of the final action by the Board until it was provided to him by the Board in conjunction with this case, approximately ten days before the October 26, 2017, hearing in this Court.  Nonetheless, having attempted to get its decision to the Plaintiff on six occasions, the Board did not in bad faith act to conceal its findings from the Plaintiff.  It did not, as the Plaintiff suggests, keep him in limbo or prevent him from petitioning the Indiana Supreme Court to review the Board's decision.

Assuming timely delivery of the July 15 and July 28 mailings, the Plaintiff would have had to have filed a petition for review with the Indiana Supreme Court within 20 days of receiving the Board's decision.  *See* Indiana Rule for Admission and Disciple Rule 14, Section 2 ("Any applicant aggrieved by the final action of the State Board of Law Examiners in refusing to recommend to the Supreme Court of Indiana the admission of the applicant to practice law in Indiana for any reason other than the failure to pass any examination as set forth in section (1) may, within twenty (20) days of receipt of notification setting forth the reason for the refusal, file a petition with the Supreme Court of Indiana requesting review by [that] Court of such final determination.").  At the time of the October 26, 2017, hearing, the Plaintiff had not filed such a petition.  However, the Plaintiff has filed in this Court a Motion to Stay *Younger* Abstention Ruling (Dkt. No. 62), in which he indicated that, on October 30, 2017, he filed with the Indiana Supreme Court a "Motion for Ind. Admission and Discipline Rule 12, §9 Hearing Review Determination."  *See* Dkt. No. 62-1.

Whether or not the Plaintiff's petition was timely filed is not a question this Court must answer.  At present, the matter is still pending before the Indiana Supreme Court.  Because it is

still pending at this time, and because the Defendants did not act in bad faith in the state proceeding, *Younger* abstention dictates that this Court not exercise jurisdiction over the Plaintiff's claims related to his bar examination application.[4] Accordingly, the Court **DENIES** the Plaintiff's motion to stay *Younger* abstention ruling (Dkt. No. 62), **DENIES** the Plaintiff's motion for reconsideration (Dkt. No. 39), and, for lack of subject matter jurisdiction, **DISMISSES WITHOUT PREJUDICE** all claims in the Plaintiff's Third Amended Complaint, except for his claim regarding the constitutionality of Admission and Discipline Rule 2.1.[5]

### III. ADMISSION AND DISCIPLINE RULE 2.1

The only claim remaining before this Court is the Plaintiff's claim regarding the constitutionality of Admission and Discipline Rule 2.1, the rule governing legal intern certification. At the October 29, 2017, hearing, the parties agreed that this claim is ready to be resolved as a matter of law. The parties presented their arguments in the briefs relating to the State's motion to dismiss. The Court now considers this claim.

Indiana Admission and Discipline Rule 2.1 allows law students and law school graduates who meet particular criteria to work as certified legal interns. The Plaintiff takes issue with Admission and Discipline Rule 2.1's Section 2(b), which allows law school graduates to serve as legal interns only "from the date of graduation until the graduate has taken and has been notified of the results of the first examination for which the graduate is eligible under Admission and

---

[4] Even if the state proceeded were concluded, the *Rooker-Feldman* doctrine would preclude this Court's review of these claims.

[5] At the hearing, when referring to his claim regarding the constitutionality of the bar examination, the Plaintiff agreed that, if the Court were to "rule against me on the *Younger* abstention rule, it will be dismissed." The Court, therefore, dismisses without prejudice that claim as well.

Discipline Rule 13, or if successful on that examination, until the first opportunity thereafter for formal admission to the Bar of Indiana."[6] Ind. Admis. Dis. R. 2.1.

The Plaintiff argues that Admission and Discipline Rule 2.1 "violates his right to equal protection . . . [because] it discriminates against law school graduates who sit for their second bar exam or subsequent bar exams, and law school graduates who decline to take the bar exam" because Section 2(b) prohibits them from becoming certified legal interns. Dkt. No. 49 at 2 (internal quotation and citation omitted). He argues that "he is unable to utilize his juris doctorate degree and law experience to serve as a legal intern for any Indiana attorney," which prevents him from "pursuing his lawful calling[] and property interest in obtaining the need-based benefit of employability." Dkt. No. 49 at 7. He asserts that the strict scrutiny standard of review should apply because working as a certified legal intern is a fundamental right. *Id.* He contends that Admission and Discipline Rule 2.1 "does not satisfy a compelling or important government interest[] and is not substantially related to serving that interest," *id.* at 2, resulting in a "Fourteenth Amendment deprivation," *id.* at 7.

Although the Plaintiff correctly indicates that the Fourteenth Amendment includes a generalized fundamental liberty to pursue a vocation, states have "a constitutionally permissible" and "substantial interest in the qualifications of those admitted to the practice of law." *In re Griffiths*, 413 U.S. 717, 723; 725 (1973). "The right to practice law without taking a bar examination is not a fundamental right for equal protection purposes." *Scariano v. Justices of Supreme Court of State of Ind.*, 38 F.3d 920, 924 (7th Cir. 1994) (citation omitted). In regulating

---

[6] The Plaintiff does not appear to challenge the constitutionality of Admission and Discipline Rule 2.1 as a whole. Rather, he focuses on Section 2(b) of the rule. Although the Court refers to "Admission and Discipline Rule 2.1" in this Entry, it addresses the Plaintiff's challenge to Section 2(b).

the practice of law, "[a] State can require high standards of qualification, such as good moral character or proficiency in its law . . . , but any qualification must have a *rational* connection with the applicant's fitness or capacity to practice law." *Schware v. Board of Bar Examiners of New Mexico*, 353 U.S. 232, 239 (1957) (citations omitted) (emphasis added); *see also Scariano*, 38 F.3d at 924 (applying rational basis review to Indiana bar admission rule).

By extension, the same can be said regarding the state's regulation of certified legal interns. A rational basis test applies to rules governing certified legal interns because they are, in effect, practicing law, albeit to a limited extent. *See* Ind. Admis. Dis. R. 2.1, Section 4 "Scope of Conduct" (Certified legal interns are permitted to "interview, advise, negotiate for, and represent parties in any judicial or administrative proceeding in this State, provided all activities undertaken are supervised and approved by an attorney who is a member of the Bar of this State."). In this case, the Plaintiff has articulated no viable reason for requiring a higher level of scrutiny: Being able to work as a certified legal intern, just like working as a lawyer, is not a fundamental right, and there is no suspect class at issue here. Accordingly, the question before this Court is whether Admission and Discipline Rule 2.1 is rationally related to a legitimate government interest.[7]

The Defendants argue that Admission and Discipline Rule 2.1 is rationally related to the state's interest in providing practical training to "allow[] law students and graduates who have not yet sat for their first bar an opportunity designed 'to be beneficial to the law student's training.'" Dkt. No. 44 at 12 (quoting Ind. Admis. Dis. R. 2.1). They also argue that the "legal

---

[7] As the Seventh Circuit explains in *Scariano*, "[f]or the purposes of constitutional inquiry, courts treat [Admission and Discipline] Rules as legislation," 38 F.3d at 923, because in making the rules, the Indiana Supreme Court exercises the authority granted it by Indiana's constitution, *Brown v. Bowman*, 668 F.3d 437, 439 (7th Cir. 2012) (citing Ind. Const. art. VII, § 4).

11

intern program is simply another tool" the state uses to regulate the quality of legal practice and that courts have found that states have a legitimate interest in such regulations. Dkt. No. 44 at 12-13 (citing *Sestric v. Clark*, 765 F.2d 655, 663 (7th Cir. 1985) ("[T]he states have been held to have a legitimate interest in regulating the quality of legal practice.")). They further explain that limiting law school graduates' ability to work as certified legal interns to the time from the date of graduation until the graduate has taken and has been notified of the results of the first examination for which the graduate is eligible, or if successful on that examination, until the first opportunity thereafter for formal admission to the Bar of Indiana is a necessary part in regulating the quality of the state's legal practice. Dkt. No. 44 at 14. They argue that those who have failed the bar examination have demonstrated that they do not have the requisite capacity to practice law in Indiana and, for that reason, should not continue to be eligible to work as legal interns. *Id.* at 13. The Defendants also argue that, "by simply never taking the bar examination, a law school graduate could simply avoid the requirement of showing that he or she does not have the requisite capacity to practice law," which would thwart the state's ability to regulate the quality of legal practice. *Id.* at 14.

The Court agrees with the Defendants' arguments. To protect the quality of the state's legal practice, the Indiana Supreme Court implemented Section 2(b) to prevent law school graduates who have demonstrated a lack of capacity and those who have chosen to avoid demonstrating capacity from working as legal interns. Just as bar examinations have been found to have a rational relationship to the states' interest in evaluating bar applicants' capacity to practice law,[8] the requirements in Admission and Discipline Rule 2.1's Section 2(b) have a

---

[8] *See, e.g.*, *Poats v. Givan*, 651 F.2d 495, 497 (7th Cir. 1981) ("Bar examinations have a rational connection with the applicant's fitness or capacity to practice law.").

rational relationship to the state's legitimate interest in regulating the quality of legal practice. The Defendants have met their burden of identifying a legitimate state interest and showing that Admission and Discipline Rule 2.1, including Section 2(b), is rationally related to furthering that interest. Accordingly, the Defendants are entitled to judgment on this claim.

## IV. CONCLUSION

For all of the reasons described above, the Court now **DENIES** the Plaintiff's motion for reconsideration (Dkt. No. 39), **DENIES** the Plaintiff's motion to stay *Younger* abstention ruling (Dkt. No. 62), **DISMISSES WITHOUT PREJUDICE** for lack of subject matter jurisdiction all of the Plaintiff's claims in the Third Amended Complaint, except for his claim regarding the constitutionality of Admission and Discipline Rule 2.1, as to which judgment will be entered as a matter of law in favor of the Defendants.

SO ORDERED: 11/17/17

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

**Copy by U.S. Mail to:**

**Mark A. Brooks-Albrechtsen**
**2230 Stafford Road**
**Suite 115**
**Plainfield, IN 46168**

Copy to all counsel of record via electronic notification